**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**KEVIN COBBINS**                                                                 **CIVIL ACTION**

**VERSUS**

                                                                                                    **NO. 21-155-JWD-EWD**

**JONATHAN GRAHAM, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 1, 2022.

                                                                 **ERIN WILDER-DOOMES**
                                                                  **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**KEVIN COBBINS**                              **CIVIL ACTION NO.**

**VERSUS**

**JONATHAN GRAHAM, ET AL.**                    **21-155-JWD-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment (the "Motion"),[1] filed by Defendants Christopher Sollie ("Sollie"), Kevin Reeves, John Riles, Mark Richards, Len Marie, and Scott Davis, all officers of the Louisiana State Police (collectively, the "LSP Defendants"), which was referred to the undersigned for report and recommendation.[2] The Motion is opposed by Plaintiff Kevin Cobbins ("Plaintiff"), and LSP Defendants have filed a reply memorandum.[3] Oral argument is not necessary. After carefully considering the law, the facts and evidence in the record, and the submissions of the parties, it is recommended that the Motion be denied, as fact issues and credibility determinations preclude summary judgment on Plaintiff's claims against the LSP Defendants. It is further recommended that this matter be referred to the undersigned for a scheduling conference.[4]

**I.    BACKGROUND**

This litigation arises out of a traffic stop of the Plaintiff, which resulted in his arrest (the "Incident"). According to Plaintiff, he was returning home from work in the early morning hours

---

[1] R. Doc. 26.
[2] R. Doc. 50.
[3] R. Docs. 49 & 46. LSP Defendants filed their reply memorandum in response to the opposition attached to Plaintiff's Motion for Leave to File Excess Pages (filed on November 12, 2021) because they were ordered to file their reply by November 15, 2021. R. Docs. 40, 43, 43-2, and 46. The opposition ultimately filed is the same as the one attached to the Motion for Leave. *Compare* R. Doc. 49 *with* R. Doc. 43-2.
[4] The scheduling conference was canceled considering the Motion to Stay Discovery, filed by LSP Defendants. R. Docs. 31, 42. On July 11, 2022, the Motion to Stay Discovery was granted, because the instant Motion raised the defense of qualified immunity on behalf of Sollie. R. Doc. 51.

of March 12, 2020 while driving on Interstate 55 near Hammond, Louisiana, when his rental car was followed and then pulled over by Officer Jonathan Graham of the Tangipahoa Sheriff's Office ("TPSO").[5] Three additional law enforcement vehicles arrived/were present on the scene.[6] Upon stopping, Plaintiff turned off his car, threw his keys out of the window, tried to remember how to open the door, and raised his hands at the officers' directions.[7] Plaintiff was "immediately surrounded by five Tangipahoa Parish Sheriff's Officers," Defendants Graham, Caleb Mott, Christopher Shaw, Brian Harkins and Scott Glen, the ("TPSO Defendants"), and LSP trooper Sollie, "with their weapons drawn, shouting."[8] Some or all of the TPSO Defendants approached the car from various directions and ultimately removed Plaintiff from his car and threw him to the ground, all while Plaintiff asked what he was accused of doing.[9] While Plaintiff was still in the car, Sollie stated that he would tase Plaintiff, but did not.[10] Plaintiff was snatched from the car and pinned face down on the ground by the TPSO Defendants, and admits that while he was pinned to the ground, he did not immediately put his hands behind his back as ordered.[11] Graham straddled Plaintiff and then struck Plaintiff in the lower back.[12] While on the ground with Graham on his back, Sollie tased Plaintiff.[13] After Plaintiff was tased, Plaintiff's hands were put behind his back and he was handcuffed while on the ground.[14] Plaintiff was pulled off of the ground, and despite notifying that officers that he had a back injury, he was dragged along the pavement and put inside

---

[5] R. Doc. 4, ¶¶ 3, 25-28. Plaintiff's First Amended Complaint is the operative complaint in this matter.
[6] R. Doc. 4, ¶ 30.
[7] R. Doc. 4, ¶¶ 2, 32.
[8] R. Doc. 4, ¶¶ 1, 3, 33.
[9] R. Doc. 4, ¶¶ 2, 36-41. Plaintiff alleges he repeatedly asked this question and initially received no response but was ultimately told by a TPSO Defendant, after he was handcuffed: "It's called not listening." R. Doc. 4, ¶¶ 43, 51.
[10] R. Doc. 4, ¶¶ 40-41.
[11] R. Doc. 4, ¶ 42.
[12] R. Doc. 4, ¶¶ 2-3, 44.
[13] R. Doc. 4, ¶¶ 2-3, 45-47.
[14] R. Doc. 4, ¶ 48.

2

a police car by the TPSO Defendants.[15]  Plaintiff alleges that his leg was hit by the car door while the TPSO Defendants placed him in the police car.[16]  Plaintiff and his vehicle were searched, and then Plaintiff was taken to a hospital for evaluation and treatment.[17]  Plaintiff was booked into the Tangipahoa Parish jail and remained there for one day until he was released on bond.[18]  Plaintiff was ultimately charged with improper lane usage in violation of La. R.S. 32:79, resisting an officer in violation of La. R.S. 14:108, and possession of marijuana in violation of La. R.S. 40:966(C) and (E).[19]

On June 9, 2021, Plaintiff filed his Amended Complaint in this Court.  Pertinent to the instant Motion, Sollie is sued in his individual capacity for excessive force during the traffic stop and for failure to intervene in the excessive force used against Plaintiff by the other officers.[20]  Reeves, Riles, Richards, Marie and Davis (the "LSP Supervisors") are all sued in their individual capacities as final policymakers for the training, supervision, discipline, and control of LSP staff, including Sollie, and for administration, polices, practices, and operations of the LSP and/or various LSP units.[21] Plaintiff brings his claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights under the United States Constitution[22] and for assault, battery,

---

[15] R. Doc. 4, ¶¶ 52, 56-57.
[16] R. Doc. 4, ¶ 58.
[17] R. Doc. 4, ¶¶ 35, 53-54 63, 65.  Plaintiff contends that he was unarmed, and no weapons were found. R. Doc. 4, ¶ 35 and R. Doc. 49-2, ¶ 20.
[18] R. Doc. 4, ¶ 66.
[19] R. Doc. 4, ¶ 69.  Plaintiff avers that the District Attorney has offered to drop the criminal charges if Plaintiff does not pursue his civil rights claims.  *Id.* at ¶ 70.
[20] R. Doc. 4, ¶ 13.
[21] R. Doc. 4, ¶¶ 19-23 and *see* ¶¶ 71-134.
[22] While the Amended Complaint references the Fourteenth Amendment, Plaintiff alleges that his damages stem from the unconstitutional use of excessive force, generally understood to invoke Plaintiff's rights under the Fourth Amendment and that is the claim argued by the parties and addressed herein. *See Graham v. Connor,* 490 U.S. 386, 387 (1989) ("Claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen are most properly characterized as invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable seizures and must be judged by reference to the Fourth Amendment's 'reasonableness' standard.'").

and intentional infliction of emotional distress ("IIED") under Louisiana law.[23] Plaintiff alleges that he suffered "extreme physical pain," including sores to his wrists, and abrasions, swelling, and bruising to his back, arms, and knees.[24] He seeks declaratory relief and damages, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.[25] Contemporaneously with their Answer, on September 16, 2021, LSP Defendants filed the instant Motion, seeking summary dismissal of all of Plaintiff's §1983 and state law claims against them.[26]

## II. LAW AND ANALYSIS

### A. Legal Standard for Summary Judgment

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[27] "A 'material' fact is one that might affect the outcome of the suit under governing law,' and a fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[28] A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.[29] If the moving party carries its burden of proof, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor, *i.e.*, "there

---

[23] R. Doc. 4, ¶¶ 7-8, 37-43, 44-46.
[24] R. Doc. 4, ¶ 67.
[25] R. Doc 4, prayer for relief. Defendants filed their Answer and affirmative defenses on September 16, 2021 and asserted qualified immunity. R. Doc. 25.
[26] R. Docs. 26.
[27] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).
[28] *McCullough v. Wright*, 824 Fed.Appx. 281, 284 (5th Cir. Sept. 9, 2020), quoting *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (some internal quotations omitted).
[29] *Celotex Corp.*, 477 U.S. at 322.

is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[30] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[31] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[32] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[33] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[34]

### B. Genuine Issues of Material Fact Prelude Summary Judgment

1. <u>Qualified Immunity</u>

The qualified immunity defense, which operates to protect public officials who are performing discretionary tasks if their actions were objectively reasonable in light of clearly established law, requires a two-step analysis.[35] Taking the facts as alleged in the light most favorable to the plaintiff(s), the Court considers whether a defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established

---

[30] *Anderson*, 477 U.S. at 249, *citing First National Bank of Arizona v. Cities Service Co. No. 23*, 391 U.S. 253, 288-89 (1968).
[31] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[32] *Celotex Corp.*, 477 U.S. at 323.
[33] *Little*, 37 F.3d at 1075.
[34] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[35] *Huff v. Crites*, 473 Fed.Appx. 398, 399 (5th Cir. 2012).

at the time that the violation occurred.[36] The two elements may be analyzed in either order.[37] "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[38]

> 2. On the Summary Judgment Evidence, Plaintiff Has Overcome Sollie's Qualified Immunity Defense as to Excessive Force

An officer violates the Fourth Amendment when an arrestee "suffers an injury[39] that results directly and only from a clearly excessive and objectively unreasonable use of force."[40] "Crucially, this analysis must be objective: To make out a Fourth Amendment violation ... 'the question is whether the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to their underlying intent or motivation.'"[41] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[42]

Both parties rely on the United States Supreme Court's decision in *Graham v. Connor*. The following factors bear on the reasonableness of force: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

---

[36] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).
[37] *Pearson*, 555 U.S. at 236 (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001)—that called for consideration of the two-pronged analysis in a particular order—should not be "regarded as an inflexible requirement"). *See also, Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015), citing *Pearson*, 553 U.S. 223 ("We have discretion 'in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'").
[38] *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012), citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).
[39] LSP Defendants do not dispute that Plaintiff has sufficiently alleged an injury. *See Ramirez v. Martinez,* 716 F.3d 369, 377–78 (5th Cir. 2013) ("Martinez does not challenge these allegations of injury and causation on appeal. Therefore, we need determine only whether Ramirez succeeds in showing Martinez's use of force was clearly excessive to the need and objectively unreasonable.").
[40] *Cloud v. Stone,* 993 F.3d 379, 384 (5th Cir. 2021), citing *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) and *Graham v. Connor*, 490 U.S. 386, 395 (1989). Both parties cite *Joseph*, which is cited by *Cloud*.
[41] *Cloud,* 993 F.3d at 384, citing *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 397) (cleaned up).
[42] *Cloud,* 993 F.3d at 384, citing *Graham*, 490 U.S. at 396.

6

actively resisting arrest or attempting to evade arrest by flight."[43] "We consider 'not only the need for force, but also the relationship between the need and the amount of force used.'"[44] Claims of excessive force are fact intensive; whether the force used was "clearly excessive" and "clearly unreasonable" depends on the facts and circumstances of each particular case.[45]

Faced with an uncooperative arrestee, officers may properly use "measured and ascending actions that correspond to [the arrestee's] escalating verbal and physical resistance."[46] "Our cases on police use of tasers have paid particular attention to whether officers faced active resistance when they resorted to a taser. Where … the severity of crime and immediate safety threat are relatively inconclusive, a suspect's active resistance to arrest may justify this degree of force."[47]

Focusing on the third *Graham* factor of active resistance, LSP Defendants argue that Plaintiff acknowledged in his Amended Complaint that Sollie tased him after Plaintiff failed to comply with the order to put his hands behind his back, which distinguishes this case from others in which the excessive force was found because the suspects did not resist.[48] LSP Defendants allege that Sollie's body camera footage and dashboard camera footage show that Plaintiff ignored multiple commands to place his hands behind his back (and exit his vehicle).[49] LSP Defendants argue that the single use of the taser to gain Plaintiff's compliance so that he could be handcuffed was not unreasonable and did not violate his constitutional rights, such that Sollie is entitled to qualified immunity.[50]

---

[43] *Cloud,* 993 F.3d at 384, citing *id* and *see* R. Doc. 26-1, pp. 7-8 and R. Doc. 49, pp. 9-11.
[44] *Cloud,* 993 F.3d at 384, citing *Joseph*, 981 F.3d at 332 (quoting *Deville*, 567 F.3d at 167) (internal quotation marks omitted).
[45] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009), citing *Graham*, 490 U.S. at 396.
[46] *Cloud,* 993 F.3d at 384, citing *Joseph* at 332–33 (quoting *Poole*, 691 F.3d at 629) (cleaned up).
[47] *Cloud,* 993 F.3d at 384.
[48] R. Doc. 26-1, pp. 3-4, 8-9, citing R. Doc. 4, ¶ 42.
[49] R. Doc. 26-1, pp. 4-5.  The videos were filed conventionally and are not in the electronic record.  They were attested to by the affidavit of LSP Lieutenant Louis Calato, the custodian of record for dashboard and body camera videos kept in the custody of LSP. R. Doc. 26-2 and R. Docs. 30, 37.
[50] R. Doc. 26-1, pp. 8-9.

Plaintiff addresses all three *Graham* factors. With respect to the first two factors, Plaintiff argues that Sollie's "Use of Force Report" ("UOF Report") reflects that Plaintiff was unarmed,[51] was stopped for a low level traffic stop/misdemeanor, was not an immediate threat to the safety of the officers, and was not actively resisting arrest by force or flight.[52] With respect to the third factor, Plaintiff argues that multiple Fifth Circuit cases hold that tasing is excessive force where suspects were similarly surrounded by officers and offering no more than passive resistance, *i.e.*, failure or refusal to obey an officer's command. Plaintiff argues that force is not justified if a suspect engages in passive resistance, and agrees that the timing and amount of resistance is determinative of the reasonableness of the force used.[53] According to Plaintiff, his only resistance is alleged to have been his failure to obey instructions to exit the vehicle and to place his hands behind his back, which is, at most, passive resistance, citing *Hanks v. Rogers* (among other authority).[54] Plaintiff contends that in *Hanks*, which involved a similar traffic stop, the Fifth Circuit held that the plaintiff's failure to obey commands to exit his vehicle and go to his knees, his questioning of the officers, and taking a "small lateral step," constituted passive resistance.[55] Plaintiff argues that the use of tasers in cases involving far more noncompliant behavior has been held to constitute excessive force.[56]

Plaintiff also argues that, unlike the video in *Scott v. Harris*, the videos in this case do not

---

[51] R. Doc. 49-3, p. 3 and *see* Plaintiff's Declaration at R. Doc. 49-2, p. 2.
[52] R. Doc. 49, pp. 8, 11, citing R. Doc. 49-3. The UOF Report was not authenticated; however, LSP Defendants have not objected to Plaintiff's reliance on it. The UOF Report states that it was authored by Sollie. Additionally, the parties have not undertaken discovery because LSP Defendants elected to file this Motion early in the case with only the video evidence in support, and then obtained a stay of discovery pending resolution of the Motion. R. Docs. 31 & 51.
[53] R. Doc. 49, p. 11, citing, in part, *Joseph*, 981 F.3d 319 and cited cases.
[54] R. Doc. 49, pp. 12-17, citing R. Doc. 26, pp. 8-9, R. Doc. 26-3, pp. 2-3, and 853 F.3d 738 (5th Cir. 2017). Plaintiff also relies on *Deville*, 567 F.3d 156 (suspect's refusal to leave her car and grandchild until her husband came to get the child, and refusal to roll down the window with no attempt to flee, was passive resistance, and the officer's breaking of her car window and pulling her through it could be found unreasonable) at R. Doc. 49, pp. 14-15.
[55] R. Doc. 49, citing 853 F.3d 738.
[56] R. Doc. 49, pp. 15-17, citing *Newman v. Guedry,* 703 F.3d 757 (5th Cir. 2012) and *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016).

support use of the taser as reasonable force because they do not blatantly contradict Plaintiff's version of the events.[57] Plaintiff contends that the footage relied upon by LSP Defendants only shows that Plaintiff did not immediately comply with directions to put his hands behind his back, which is, at most, passive resistance under *Graham*. Plaintiff further argues that the videos actually support his claims of excessive force, as Plaintiff held his hands up and could not flee but was dragged out of his car, pinned on the ground facedown with his shirt torn, and then tased.[58]

LSP Defendants reply that Plaintiff has not denied any of its undisputed material facts, including the allegation that he failed to put his hands behind his back as ordered, and that Plaintiff improperly asks the Court to consider Plaintiff's subjective reasoning for his actions, rather than considering the officer's actions objectively.[59] LSP Defendants argue that *Hanks* featured a calmer interaction and is factually distinguishable, particularly because, unlike the *Hanks* plaintiff, Plaintiff in this case did not immediately stop his vehicle and almost hit a TPSO vehicle. Further, Plaintiff did not comply with the order to exit his vehicle, such that he had to be physically removed from it and did not comply with the order to put his hands behind his back but instead struggled.[60]

The parties agree that the only use of force by Sollie, the only LSP Defendant present at the scene, was when Sollie tasered Plaintiff.[61] LSP Defendants solely rely on the body and dashboard camera footage to support their argument that there was no constitutional violation because Sollie's use of force was not excessive in light of Plaintiff's active resistance. This is the primary *Graham* factor to be considered according to both parties.[62] Under *Scott v. Harris*, video evidence can establish the propriety of summary judgment when the non-movant's version of

---

[57] R. Doc. 49, pp. 17-18, citing *Scott,* 550 U.S. 372, 380 (2007) and *Ramirez,* 716 F.3d 369.
[58] R. Doc. 49, pp. 18-19.
[59] R. Doc. 46, pp. 1-2.
[60] R. Doc. 46, pp. 3-4.
[61] R. Doc. 49-1, p. 5 (Plaintiff's opposing statement of material facts).
[62] R. Doc. 26-1, pp. 7-8 and R. Doc. 49, p. 11.

9

events was "so utterly discredited" by video evidence "that no reasonable jury could have believed him," such that the court "should have viewed the facts in the light depicted by the videotape."[63] If the video evidence completely discredits Plaintiff's version of the Incident, Sollie may be entitled to qualified immunity.

### a. The Video is Inconclusive

The video evidence relied on by LSP Defendants to support their version of what happened during the Incident does not meet the standard established by the Supreme Court in *Scott*, as the footage does not completely discredit Plaintiff's versions of events such that no reasonable jury could believe him.[64] Specifically, the video from the dashboard camera is inconclusive because it is too far from the dark scene, and the lights from the law enforcement vehicles are bright and flashing, which obscures the actions of Plaintiff and the officers. While Plaintiff and the officers are visible for some of the dashboard camera footage early in the interaction, once Plaintiff is removed from his vehicle to the ground, the actions of the parties are particularly obscured.[65] The video from Sollie's body camera (the "video") shows more of what occurred during the Incident, but not the entire interaction, and not clearly because it is dark and Sollie is not directly facing Plaintiff's interaction with other officers and/or the video does not capture all of Plaintiff and the other officers.[66] Additionally, because the parties have not engaged in discovery, we do not know

---

[63] 550 U.S. at 380.
[64] *See Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 729-30 (5th Cir. 2018) (discussing and distinguishing *Scott* because "the videos [in the instant case] do not meet that difficult standard…[and] the videos do not favor one account over the other and do not provide the clarity needed to resolve the factual dispute presented by the parties' conflicting accounts."). The Fifth Circuit has described the *Scott* standard as follows: "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Darden*, 880 F.3d at 730 (citing *Scott*, 550 U.S. at 380); *see also Ramirez*, 716 F.3d at 375 (finding that video evidence did not meet the *Scott* standard because (1) the "video does not so blatantly contradict the version of events told by [plaintiff] that no reasonable jury could believe his version and (2) the "contents of the video are too uncertain to discount [plaintiff's] version of events…"); *Hegeman v. Harrison*, No. 18-613, 2019 WL 1277523, at *8-9 (E.D. La. Mar. 20, 2019) (finding that inconclusive video footage did not clearly disprove the plaintiff's account of the incident.).
[65] Sollie admits the dashboard camera footage is not clear at this point. R. Doc. 26-1, p. 5.
[66] The footage of Plaintiff's removal from the car is taken from behind the officers, and the footage of Plaintiff being pinned to the ground only shows a partial view of some of the participants.

10

what Sollie knew when he came upon the scene.[67] Further, although the video establishes that Plaintiff was ordered to put his hands behind his back several times (as well as to exit the car), Plaintiff's hands are not completely visible while he is pinned on the ground, so it is unclear if he actively resisted[68] or whether he was effectively prevented from complying because he was pinned on the ground. As the video footage does not clearly discredit Plaintiff's version of events, we look to the remaining summary judgment evidence.

> b. *Plaintiff Has Brought Forward Sufficient Evidence to Raise a Genuine Issue of Fact as to Whether Sollie Tasing Him Violated His Constitutional Rights*

The only other summary judgment evidence at this juncture is Plaintiff's Affidavit and the UOF Report. Relevant to the tasing, according to Plaintiff's Affidavit, after a law enforcement vehicle that was following him on the interstate activated its lights and sirens, he took the exit from the interstate and came to a complete stop.[69] At least three other law enforcement vehicles arrived. He threw his keys out of the car and raised his hands. Officers came toward the car with weapons drawn.[70] The officers opened the doors of the car, grabbed Plaintiff, and tried to remove him from the car. Plaintiff repeatedly asked what he had done, to which the officers did not respond.[71] Plaintiff was thrown face down onto the ground. An officer straddled his legs and others leaned onto Plaintiff, pushing him to the ground. While Plaintiff was pinned to the ground, officers instructed him to put his hands behind his back. Plaintiff kept asking what he had done wrong, to

---

[67] Plaintiff alleges on information and belief that Sollie received a radio call which led to his arrival at the scene but contends that the recording has not been produced to Plaintiff. R. Doc. 4, ¶ 31 and R. Doc. 49-1, p. 3. The video does not depict the radio call. Thus, there is no evidence as to whether Sollie knew that Plaintiff was alleged to have almost hit a TPSO vehicle while traveling on the interstate. The information the officer possesses (and what a reasonable officer would have done with similar knowledge) is a relevant inquiry for the first prong of the qualified immunity analysis. *See Trent*, 776 F.3d at 382-83.
[68] LSP Defendants do not allege that Plaintiff attempted to flee.
[69] R. Doc. 49-2, ¶¶ 3-5.
[70] R. Doc. 49-2, ¶¶ 6-8.
[71] R Doc. 49-2, ¶¶ 9-11.

which officers did not respond. An officer punched plaintiff in the lower torso and then Plaintiff was tased. After Plaintiff was tased, he was handcuffed. While handcuffed an officer responded to Plaintiff's question about what he had done wrong, "It's called not listening." Plaintiff states he was not a threat to officers and had no weapon.[72]

The UOF Report, which appears to have been prepared by Sollie, indicates that the incident occurred at the I-55 NB off ramp to LA 3234.[73] The UOF Report confirms that one cycle was administered to Plaintiff's low back. The reason for the contact and severity of the crime are indicated to be "traffic stop," "misdemeanor arrest." As to whether Plaintiff an "immediate threat to the safety of any officer(s)/others," the UOF Report has the box checked "No."[74] Pre-assault indicators were marked "ignoring commands" and "illogical responses." As to whether Plaintiff actively resisted arrest by force or attempted to evade arrest by flight, the UOF Report has the boxes checked "No." It is also noted that Plaintiff was not armed. As a description of the commands given and the subject's response, the UOF Report states, "The subject was told multiple times to exit the vehicle, which he refused to do so. While on the ground the subject was advised multiple times to place his hands behind his back, which he refused."[75]

The UOF Report indicates that the severity of the crime at issue was a misdemeanor traffic violation; there was no immediate threat to the safety of any officer or to others; and Plaintiff did not actively resist arrest or attempt to evade arrest by fleeing. Considering the *Graham* factors based solely on the summary judgment evidence presented, Plaintiff has raised a genuine issue of fact as to whether the tasing was excessive, *i.e.*, whether Sollie violated his constitutional rights.

---

[72] R. Doc. 49-2, ¶¶ 12-20.
[73] R. Doc. 49-3, p. 1.
[74] R. Doc. 49-3, pp. 1-2.
[75] R. Doc. 49-3, p. 3.

12

### c. The Right was Clearly Established

To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[76] While the question must be "frame[d] ... with specificity and granularity,"[77] we do not require plaintiffs to identify a case "directly on point." "[T]he unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations."[78] In an "an obvious case," *Graham* and *Garner*[79] may supply the "clearly established law" regarding excessive force.[80]

It is clearly established that use of a taser against an arrestee who (1) was stopped for a minor traffic violation; (2) was not an immediate threat or flight risk; and (3) displayed only passively resistance, including asking what he had done wrong, is excessive force.[81] The Fifth Circuit has previously held that "a constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest."[82] LSP Defendants' attempt to distinguish *Darden* and *Hanks*, and their argument that "there is no existing U.S. Supreme Court, Fifth Circuit, or Louisiana Supreme Court precedent as of March 12, 202, which would have placed any reasonable officer on notice that a single deployment of a taser against a subject who repeatedly ignores clear commands and **actively resists** arrest by other officers was a violation of that person's constitutional rights,"[83] on the basis of the video footage are unavailing. At the time

---

[76] *Mullenix v. Luna*, 577, U.S. 7, 11 (2015) (per curiam), citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012).
[77] *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019).
[78] *Cantrell,* 666 F.3d at 919, citing *Brown v. Miller,* 519 F.3d 231, 236-37 (5th Cir. 2008).
[79] *Tennessee v. Garner*, 471 U.S. 1 (1985).
[80] *Hanks v. Rogers*, 853 F.3d 738, 749 (5th Cir. 2017), citing *White v. Pauly*, 580 U.S. 73 (2017) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).
[81] *See Hanks,* 853 F.3d at 749 (reversing dismissal of § 1983 claim based on qualified immunity for take down in connection with misdemeanor traffic stop).
[82] *Darden*, 880 F.3d at 729–32 (describing clearly established law as of May 2013). *See also, Trammell v. Fruge*, 868 F.3d 332, 343 (5th Cir. 2017), citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (holding that "the law [as of January 2013] clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp").
[83] R. Doc. 26-1, p. 10 (emphasis added).

of the tasing, the video is inconclusive as to whether Plaintiff was actively resisting arrest and, viewing the evidence in the light most favorable to Plaintiff, the UOF Report says he was not actively resisting. According to Plaintiff's Affidavit (and the video), he was already pinned to the ground and straddled by at least one officer when he was tased.

> 3. On the Summary Judgment Evidence, Plaintiff Has Overcome Sollie's Qualified Immunity Defense as to Failure to Intervene

"An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."[84] An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm and (4) chose not to act.[85] Bystander liability requires more than mere presence in the vicinity of the violation; "we also consider whether an officer 'acquiesced in' the alleged constitutional violation."[86] An officer must have "had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."[87]

LSP Defendants argue "[t]here is nothing in the video captured from Trooper Sollie's body camera which depicts a use of force by any of the TPSO deputies which so obviously constituted a constitutional violation that Trooper Sollie 'acquiesced' or 'functionally participated' in such use of force. If TPSO did use excessive force during their encounter with Cobbins, Trooper Sollie had no reasonable opportunity to intervene and stop it."[88] Plaintiff argues Sollie witnessed and joined-in or acquiesced in the TPSO Defendants' "pre-taser" assaults when he witnessed the TPSO Defendants pull Plaintiff out of the car, at which point Sollie threatened to tase Plaintiff. According

---

[84] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).
[85] *Joseph*, 981 F.3d at 343, citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).
[86] *Joseph*, 981 F.3d at 343, citing *id*. at 647 (alteration omitted) (quoting *Hale*, 45 F.3d at 919).
[87] *Hale*, 45 F.3d at 919.
[88] R. Doc. 26-1, p. 12.

to Plaintiff, Sollie also witnessed when the TPSO Defendants injured Plaintiff by pulling him up, dragging him across the pavement, and closing the door on his leg, and still failed to intervene.[89]

As the video does not depict the entirety of the Incident beginning from when Plaintiff drove off the interstate and pulled over, nor does it clearly show, at a sufficiently close range, all the TPSO Defendants' actions in pulling Plaintiff out of his car and pinning him on the ground, the video does not conclusively contradict that Plaintiff was punched in the lower torso, drug across the pavement, yanked to his feet after he told an officer that he had a back injury, or that his leg was hit with the car door--facts Plaintiff attest to in his Affidavit.[90] It is undisputed that Sollie was on the scene and participated in at least one act of alleged excessive force in connection with the TPSO Defendants' arrest of Plaintiff.[91] It is undisputed that Sollie did not take any measures to intervene. Here, Plaintiff has established a fact issue as to whether Sollie functionally participated in the acts of his fellow officers that are alleged to be unconstitutional.

> 4. <u>Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Remaining Claims Against Sollie and the LSP Supervisors</u>

LSP Defendants seek summary dismissal of Plaintiff's § 1983 claims against the LSP Supervisors for their failure to train, supervise and/or discipline Sollie on the ground that these claims fail in the absence of an underlying constitutional violation.[92] They also seek summary

---

[89] R. Doc. 49, pp. 21-22. LSP Defendants did not assert a reply to this argument.
[90] R. Doc. 49-2, ¶¶ 12, 16, 21 & 23. The footage depicts Plaintiff lying and sitting on the ground, being hoisted up by the TPSO Defendants, and then sinking to the ground.
[91] According to the UOF Report, the reason the use of force was necessary was "assisting another agency" "effecting an arrest." R. Doc. 49-3, p. 3.
[92] R. Doc. 26-1, p. 12, citing *Whitley*, 726 F.3d at 648-49.

dismissal of Plaintiff's assault, battery,[93] and IIED[94] claims against Sollie, and against the LSP Supervisors under the doctrine of *respondeat superior*.[95] LSP Defendants contend that Sollie's use of force was reasonable and his actions did not rise to the level of extreme conduct required to constitute IIED.[96] However, because there are genuine issues of material fact precluding summary judgment on Plaintiff's excessive force and bystander liability claims against Sollie, as well as a genuine issue of material fact as to Sollie's intent (strictly as an element of the state law claims),[97] it is recommended that summary judgment be denied on these claims as well.

### C. Plaintiff's Request for a Fed. R. Civ. P. 56(d) Deferral Is Moot

Plaintiff requests that the Court defer ruling on the Motion per Fed. R. Civ. P. 56(d) until

---

[93] Under Louisiana law, a battery is "harmful or offensive conduct with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." The plaintiff must allege that the person accused of battery "intended to inflict an offensive contact without the plaintiff's consent." *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987). "Assault is the imminent threat of a battery." The plaintiff must allege that they were placed in "reasonable apprehension of harmful or offensive contact." *Skinner v. Gautreaux,* No. CV 20-595-SDD-SDJ, 2022 WL 884915, at *9 (M.D. La. Mar. 24, 2022) (citations omitted).

[94] To state a claim of intentional infliction of emotional distress, a plaintiff must show that (1) the conduct alleged was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. The distress suffered must be such that no reasonable person could be expected to endure it. *Elphage v. Gautreaux,* 969 F. Supp. 2d 493, 516 (M.D. La. 2013), citing *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991).

[95] R. Doc. 4, ¶¶ 175-78, 180-81, 182-85, 187-88. *See* La. C.C. art. 2320, "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed….responsibility only attaches, when the masters or employers… might have prevented the act which caused the damage, and have not done it. The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses*." In the introduction to their Memorandum, LSP Defendants assert an alternate ground for dismissal of this claim, which is that the State of Louisiana, which is not a defendant here, is the employer of Sollie who potentially bears *respondeat superior* liability. R. Doc. 26-2, p. 1. Although this argument may have merit, LSP Defendants did not brief it or provide any evidence to support it contention that Sollie's employer is the State. *See Terrell v. Pichon,* 413 F.Supp.3d 515, 522–23 (E.D. La. 2019), *aff'd,* 795 Fed. Appx. 935 (5th Cir. 2020) (holding that in order for Louisiana State Trooper supervisors to be liable under the doctrine of *respondeat superior*, they must be "masters" or "employers") (citations omitted).

[96] R. Doc. 26-1, pp. 12-14 and *see* R. Doc. 4, ¶¶ 175-188.

[97] *Watkins v. Gautreaux*, 515 F.Supp.3d 500, 518 (M.D. La. 2021) ("Preliminarily, the parties are mistaken in assuming that the Court must reach the same result for the state law claims as it did for the federal excessive force claim. For § 1983 and qualified immunity, the issue is (in part) whether every reasonable officer under the circumstances would know that Hammett's conduct was unlawful under clearly established law. But, for the state law claims, the key question is whether, under the totality of the circumstances, Hammett's conduct was unreasonable.").

Plaintiff has an opportunity to conduct discovery.[98] Although Plaintiff's request was not properly asserted via a motion, it is recommended that Plaintiff's request be denied as moot considering the recommendation that Sollie's Motion for Summary Judgment be denied.

### III.  CONCLUSION AND RECOMMENDATION

Genuine issues of material fact preclude resolution of Plaintiff's excessive force, failure to intervene, and state law claims against Sollie, which also preclude resolution of Plaintiff's supervisory claims against the LSP Supervisors.

Accordingly,

**IT IS RECOMMENDED** that the Motion for Summary Judgment,[99] filed by Defendants Christopher Sollie, Kevin Reeves, John Riles, Mark Richards, Len Marie, and Scott Davis, be **DENIED** and this matter referred to the undersigned for a scheduling conference.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for the Court to defer ruling on the Motion for Summary Judgment per Fed. R. Civ. P. 56(d) be **DENIED AS MOOT**, considering the recommendation that the Motion for Summary Judgment be denied on the evidence presented.

Signed in Baton Rouge, Louisiana, on September 1, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[98] R. Doc. 49, pp. 1, 25-27.
[99] R. Doc. 26.