# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

KEVIN COBBINS                                    CIVIL ACTION NO.

VERSUS                                           21-155-JWD-EWD

JONATHAN GRAHAM, ET AL.

### RULING AND ORDER

Before the Court is a Motion to Quash Deposition ("Motion"),[1] filed by non-parties, the Louisiana State Police ("LSP")[2] and Faye Dysart Morrison ("Morrison"). The Motion seeks to quash the deposition subpoena to Morrison, an attorney for LSP,[3] employed by Louisiana's Department of Public Safety and Corrections ("DPSC") - Office of Legal Affairs.[4] Kevin Cobbins ("Plaintiff") opposes the Motion.[5] Although acknowledging that they lack standing to assert attorney-client privilege as to the subpoena, Defendants Christopher Sollie, Kevin Reeves, John Riles, Mark Richards, Len Marie, and Scott Davis ("the LSP Defendants") concur in the Motion.[6] Oral argument is not necessary.[7] Because Plaintiff has not met his burden of establishing the necessity or justification to depose Morrison, and because the information sought does not fall

---

[1] R. Doc. 84. *See also* R. Doc. 101-1. On September 16, 2024, LSP and Morrison filed a Motion for Leave to File Reply Brief, to Exceed the Court's Brief Page Limitation and to Strike (and Replace) OSP and Morrison's Previously Filed Reply Brief. R. Doc. 101. Plaintiff Kevin Cobbins opposed the request for leave. R. Doc. 104. Notwithstanding Plaintiff's opposition, the Court will permit the reply. OSP and Morrison explained the reason for the untimely filing, pointing out that their newly engaged counsel only received the contract for services related to this Motion on September 9, 2024, and that office closures across the state due to then-approaching Hurricane Francine delayed counsel's ability to confer with OSP and Morrison to finalize the reply brief. *See* R. Doc. 101-1, p. 1, n. 1. The Court also finds that the differences in the arguments between the original Motion and the reply memorandum are insubstantial. In other words, the reply memorandum does not raise entirely new arguments.

[2] The original Motion states that it was filed by LSP and Morrison. R. Doc. 84. The reply memorandum states that it is filed by OSP and Morrison. There does not appear to be any material difference. For ease of reference and to avoid confusion, this Ruling and Order refers to the state agency as LSP

[3] R. Doc. 84, p. 1.

[4] *See* R. Doc. 101-1, ¶¶ 1, 4.

[5] R. Doc. 88.

[6] R. Doc. 106.

[7] On August 29, 2024, the Motion was set for a hearing. R. Doc. 89. However, the hearing was canceled. R. Docs. 107, 108. After reviewing the briefing, a hearing is not necessary to resolve the issues raised.

within the permissible scope of discovery and imposes an undue burden on non-parties, the Motion will be granted, quashing the subpoena.

## I.    BACKGROUND

This litigation arises out of a traffic stop that resulted in Plaintiff's arrest.  According to the operative Complaint, the arrest occurred in the early morning hours of March 12, 2020, while Plaintiff was driving to his home in Hammond, Louisiana after completing a late night shift at a restaurant in New Orleans.[8]  Plaintiff's rental car was followed and pulled over by Deputy Jonathan Graham of the Tangipahoa Sheriff's Office ("TPSO") as Plaintiff approached the Wardline/University exit on Interstate 55 North.[9]  Present at the scene were five TPSO Officers-- Graham, Caleb Mott, Christopher Shaw, Brian Harkins, and Scott Glenn (collectively, the "TPSO Defendants")-- and one LSP Trooper, Christopher Sollie.[10]  Plaintiff claims he was forcibly pulled from his rental vehicle and thrown to the pavement by the TPSO Defendants and then punched in the lower torso by one of the TPSO Defendants when Plaintiff did not immediately put his hands behind his back, as ordered.[11]  Trooper Sollie then discharged his taser directly in contact with Plaintiff's body.[12]  Plaintiff was arrested for a traffic violation, possession of marijuana, and resisting an officer.[13]  Although Plaintiff pleaded not guilty to the charges stemming from his arrest, he was subsequently convicted on all three charges in state court.[14]

---

[8] R. Doc. 4, ¶¶ 1, 25. Plaintiff's First Amended Complaint is the operative complaint in this matter.

[9] R. Doc. 4, ¶¶ 1, 3, 25-28.

[10] R. Doc. 4, ¶¶ 3, 30.

[11] R. Doc. 4, ¶¶ 3, 42, 44.

[12] R. Doc. 4, ¶¶ 46.

[13] R. Doc. 4, ¶ 69 & R. Doc. 106, p. 2.

[14] R. Doc. 88-1, p. 5 & R. Doc. 84-1, p. 3.  According to the LSP Defendants, Plaintiff offered testimony declaring his innocence against the charge of resisting an officer during the criminal trial.  R. Doc. 106, p. 2.

Plaintiff filed his original Complaint in this Court on March 12, 2021.[15]  The following current or former employees of LSP were named as defendants in their individual capacities in the litigation: 1) LSP Trooper Sollie, for excessive force in the deployment of his taser and for failure to intervene in the excessive force used against Plaintiff by the other officers;[16] and 2) Kevin Reeves (LSP Superintendent), John Riles (commander of Trooper Solllie's troop), Mark Richards (LSP training director), Len Marie (LSP academy trainer on force), and Scott Davis (LSP trainer on use of force) (collectively, the "LSP Supervisors"), for failure to train and supervise LSP Trooper Sollie regarding use of force, and specifically the use of a taser.[17]

Plaintiff brings his claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights under the United States Constitution and for assault, battery, and intentional infliction of emotional distress ("IIED") under Louisiana law.[18]  Plaintiff alleges that he suffered "extreme physical pain," including sores to his wrists, and abrasions, swelling, and bruising to his back, arms, and knees.[19]  He seeks declaratory relief and damages, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.[20]

Three years after filing suit, and less than a month before the fact discovery deadline elapsed, Plaintiff issued a subpoena on August 19, 2024, directing Morrison to appear and testify

---

[15] R. Doc. 1.

[16] R. Doc. 4, ¶ 13.

[17] R. Doc. 4, ¶¶ 19-23 and *see* ¶¶ 71-134.  *See also* R. Doc. 88, p. 2.

[18] R. Doc. 4, ¶¶ 7-8, 37-43, 44-46.

[19] R. Doc. 4, ¶ 67.

[20] R. Doc 4, prayer for relief.  The LSP Defendants answered the suit, raising the affirmative defense of qualified immunity. R. Doc. 25 (Second, Third, and Fourth Affirmative Defenses). The LSP Defendants' Motion for Summary Judgment based on qualified immunity was denied by this Court, which denial was affirmed by the United States Fifth Circuit Court of Appeals. *Cobbins v. Graham*, No. 21-155, 2022 WL 4456276 (M.D. La. Sep. 1, 2022), report and recommendation adopted, 2022 WL 4455550 (M.D. La. Sep. 23, 2022), *aff'd*, 2023 WL 4015303 (5th Cir. June 14, 2023).

at a deposition on August 30, 2024.[21]  It is undisputed that Morrison's client was, at all relevant times, LSP.

LSP and Morrison (hereafter collectively, "Movants") timely objected to the subpoena by filing the Motion on August 23, 2024.[22]  Movants contend that the subpoena should be quashed because it: 1) calls for information and documents that are privileged; 2) imposes an undue burden on non-parties; 3) seeks information that is irrelevant to any claims in this case; and 4) is precluded by LSP's sovereign immunity.[23]  Plaintiff opposes the Motion, contending that the information sought is potentially relevant to its failure to train and supervise claims against the LSP Supervisors.  Plaintiff also argues that the Morrison e-mail is not privileged and, even if it is, Plaintiff can still seek to discover its underlying facts.  Finally, Plaintiff disputes that sovereign immunity or the Eleventh Amendment shields the LSP Defendants from the subpoena.[24]

## II.    LAW AND ANALYSIS

### A.  Subpoena to Morrison

The subpoena orders Morrison to appear to testify and to produce the following documents:

> Any emails (including attachments) sent by you regarding the significance of convictions on resisting arrest charges to the outcome of civil rights lawsuits against LSP troopers.  The emails may be in the same or similar form as in Attachment "A."[25]

Attachment "A" was an e-mail sent by Morrison, to "_DPS_OLA_ALL", on September 11, 2019 ("the Morrison e-mail"),[26] which states in relevant part:

> This order was granted today.  It dismisses a use of force claim and failure

---

[21] R. Doc. 84-2, p. 1.

[22] R. Doc. 84.

[23] R. Doc. 84; R. Doc. 101-1.

[24] Because the subpoena seeks information that exceeds the permissible scope of discovery and creates an undue burden on non-parties, it is not necessary to reach the sovereign immunity issue.

[25] R. Doc. 84-2, p. 1.

[26] R. Doc. 84-2, p. 5; R. Doc. 101-1, p. 20. ¶¶ 7-11; R. Doc. 84-1, p. 2.

to train, failure to supervise claims against LSP personnel under Heck v. [Humphrey].[27]   Where plaintiff pleaded guilty to underlying charge of resisting arrest, he cannot undermine that verdict with a judgment of excessive force.   With no underlying claim, there is no claim for failure to supervise or failure to train.   This shows how important guilty verdicts or pleas on the resisting arrest charges are to our civil cases.   Please keep this in mind in oversight of your civil suits/use of force claims.   What happens in the criminal part is important to the civil claim.[28]

Morrison's e-mail referred to a court order granting summary judgment on September 11, 2019, in *Terrell v. Pichon,* a prior civil rights lawsuit filed by the same MacArthur Justice Center attorneys who represent Plaintiff in this case.[29]   At the time Morrison sent the e-mail, she was serving as the Assistant Secretary and General Counsel for the DPSC Public Safety Services, providing legal advice to LSP management and personnel.[30]   According to Morrison, only attorneys, paralegals, and legal assistants who work for DPSC's Office of Legal Affairs belong to the group that received her e-mail.[31]

On June 16, 2021, DPSC's Deputy Secretary produced a copy of Morrison's e-mail to a local news reporter in response to a public records request, with a cover letter stating that the Deputy Secretary had decided to "waive any privilege over the responsive document[]" because the reporter had presumably already obtained a copy of the confidential communication

---

[27] *Heck v. Humphrey*, 512 U.S. 477 (1994).

[28] R. Doc. 84-2, p. 5.

[29] *See Terrell v. Pichon*, No. 18-5787, 413 F.Supp.3d 515 (E.D. La. Sep. 11, 2019), *aff'd*, 795 Fed.Appx. 935 (5th Cir. 2020) (granting summary judgment in favor of the defendants because the plaintiff made broad claims of innocence relating to the entire arrest encounter such that a finding of liability would necessarily imply the invalidity of plaintiff's criminal conviction for resisting arrest).

[30] R. Doc. 84-1, p. 2; R. Doc. 101-1, p. 20, ¶¶ 4, 6.

[31] R. Doc. 101-1, p. 20, ¶ 10.

requested.[32]  According to Plaintiff, the Morrison e-mail has also been broadcast by a Baton Rouge television station and posted on the station's website.[33]

### B. Legal Standard for Motion to Quash Subpoena

The subpoena to Morrison is governed by Fed. R. Civ. P. 45, and also subject to the parameters of Rule 26.[34]  Under Rule 45, the party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[35]  On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.[36]  "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation."[37]  To determine whether the subpoena presents an undue burden, courts consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.[38]  "For purposes of the undue burden test, relevance is measured according to Fed. R. Civ. Pro. 26(b)(1)."[39] The current standard

---

[32] R. Doc. 101-1, p. 25, ¶¶ 4, 6.

[33] R. Doc. 88, p. 3, citing Nakamoto, C., "Nakamoto obtains State Police memo: Guilty verdict 'important' to clear troopers of excessive force," WBRZ (June 18, 2021), https://www.wbrz.com/news/nakamoto-obtains-state-police-memo-guilty-verdict-important-to-clear-troopers=of-excessive-force.

[34] *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999) (citation omitted).

[35] Fed. R. Civ. P. 45(d)(1).

[36] *See* Fed. R. Civ. P. 45(d)(3)(A).  *See also Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 817-18 (5th Cir. 2004).

[37] *Id*.

[38] *Id*.

[39] *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022), citing *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (internal quotation omitted).

of discoverability under Rule 26 is "more limited to direct relevance as opposed to the previous version of Rule 26 that stipulated information is relevant if it is 'likely to lead to the discovery of relevant evidence.'").[40]

While generally, the party moving to quash or modify a subpoena bears the burden to show that compliance would impose an undue burden or expense,[41] the burden rests on the party seeking the discovery when the inquiry is directed to the files and mental impressions of an attorney.[42] This is because, in the words of the Supreme Court, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."[43] "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."[44] "And production might be justified where the witnesses are no longer available or can be reached only with difficulty."[45] "But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order."[46]

---

[40] *See Woodward v. Lopinto*, No. 18-4236, 2020 WL 3960396, at *5 (E.D. La. July 13, 2020), quoting *Rivera v. Robinson*, No. 18-14005, 2019 WL 6134190, at *4 (E.D. La. Nov. 19, 2019).

[41] *See Sines v. Kessler*, No. 18-4044, 325 F.R.D. 563, 565 (E.D. La. May 17, 2018), citing *Wiwa*, 392 F.3d at 818.

[42] *See Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947).

[43] *Hickman*, 329 U.S. at 510.

[44] *Hickman*, 329 U.S. at 511.

[45] *Hickman*, 329 U.S. at 511.

[46] *Hickman*, 329 U.S. at 512.

### C.  The Subpoena To Morrison Will Be Quashed

#### 1.  Plaintiff Has Not Sufficiently Established the Relevance of the Information Sought

Plaintiff alleges the LSP Supervisors are liable for their failure to train and supervise Trooper Sollie regarding use of force, and specifically the use of a taser, and suggests that the information he seeks to obtain from a deposition of Morrison is potentially relevant these claims.

The Supreme Court has set a high bar to establish the inadequacy of police training as a basis for liability under § 1983. [47]  This ensures that a failure-to-train claim does not result in *de facto respondeat superior* liability.[48]  When a plaintiff alleges a failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[49] .

Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.[50]  "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations, and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation."[51] Moreover, deliberate indifference requires plaintiffs to "show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights."[52]  To establish that a state

---

[47] *See Porter v. Epps*, 659 F.3d 440, 447, citing *Connick v. Thompson*, 563 U.S. 51, 70 (2011).  *See also City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694-95 (1978).

[48] *Id.*

[49] *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005), quoting *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir.1998).

[50] *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 397 (5th Cir. 2017), citing *Estate of Davis*, 406 F.3d at 381 (quotations omitted).

[51] *Estate of Davis*, 406 F.3d at 381, quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotations omitted).

[52] *Estate of Davis*, 406 F.3d at 383, quoting *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998).

actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program causes ... employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program."[53]

Plaintiff argues that the Morrison e-mail is potentially relevant to show "that LSP leadership … were aware [] that LSP troopers use tasers and other types of physical force in a manner that violates the Fourth Amendment rights of the subjects of such force, and that these constitutional violations were the obvious result of Defendants' failures in training, supervision, and discipline of troopers in the field."[54]Although not entirely clear from his argument, Plaintiff apparently suggests that the LSP Supervisor Defendants were allegedly aware of LSP troopers' use of excessive force with tasers by virtue of the Morrison e-mail and the reference to the *Terrell* case. However, *Terrell* did not involve a validated excessive force claim. At issue in *Terrell* was an LSP trooper who witnessed the plaintiff engage in a possible narcotics transaction in the French Quarter.[55]  As the trooper and his partner approached the plaintiff in their vehicle, the plaintiff began riding his bicycle up the street.  The trooper ordered the plaintiff to stop and then tased the plaintiff in the back when he did not obey the command.  According to the plaintiff, the trooper then proceeded to kick his head, stomp his face, and drag him to the sidewalk while handcuffed. The plaintiff later pleaded guilty to resisting an officer, possession of heroin, and possession with intent to distribute Tramadol.  The United States District Court for the Eastern District of Louisiana found that the plaintiff's excessive force claims were *Heck*-barred because the plaintiff's broad

---

[53] *Porter*, 659 F.3d at 447, quoting *Connick,* 563 U.S. at 61.

[54] R. Doc. 88, pp. 5-6.

[55] *Terrell*, 413 F.Supp.3d 515.

claims of innocence were contradicted by his conviction for resisting arrest.[56]   The court thus dismissed the plaintiff's claims on summary judgment.[57]   Because the *Terrell* plaintiff's claims of excessive force and failure to train and supervise were never validated, any knowledge of the facts or disposition of *Terrell* by LSP leadership cannot, as Plaintiff claims, impute knowledge of validated excessive force claims against LSP troopers.

Plaintiff also argues that Morrison's e-mail shows LSP "chose to evade scrutiny and liability through the prosecution of charges of resisting arrest to defeat an arrestee's claims of excessive force against a trooper--even if the excessive-force claim was valid."[58]   According to Plaintiff, this constitutes evidence of deliberate indifference to the risks posed by these failures in training, supervision, and discipline.[59]   Notwithstanding Plaintiff's claim that the Morrison e-mail evidences LSP's nefarious intent to prosecute resisting charges for the sole purpose of evading scrutiny and liability, the argument more fundamentally fails because it lacks a factual basis.   After all, the excessive force claims against the LSP defendants in *Terrell* were never validated.   The information Morrison shared in the e-mail also has no apparent relevance to the facts of this case because, here, the Plaintiff was arrested by a TPSO officer, and a Tangipahoa Parish District Attorney filed the bill of information that formally charged Plaintiff with resisting arrest.[60]   In other words, there is no evidence that any LSP Defendant played a role in prosecuting the resisting arrest charges against Plaintiff in this case.

Plaintiff next argues that he seeks the testimony of Morrison to show that the LSP Defendants had knowledge of deficiencies in training and supervision with respect to use of force

---

[56] *Id.*

[57] *Id.,* at 521-23.

[58] R. Doc. 88, p. 6.

[59] R. Doc. 88, p. 6.

[60] R. Doc. 106, p. 2.

that were "obvious and obviously likely to result in a constitutional violation."[61]  Yet here too, the argument lacks a factual basis because the failure to train and supervise claims at issue in *Terrell* were dismissed on summary judgment.[62]

Based on these allegations of the Morrison e-mail's potential relevance to Plaintiff's case, Plaintiff lists the following issues about which he seeks to examine Morrison:

- Which officials within LSP were given notice (via e-mail or otherwise) of the use of resisting arrest charges to insulate LSP officials from excessive force cases; and more specifically, did any of the Defendants in this case receive this information?

- How many "civil suits/use of force claims" involving LSP troopers were under review by LSP at the time of Ms. Morrison's e-mail?

- How many of such cases involved the use of a taser (as in *Terrell*)?

- What, if any, discussion was had about the need for further training and supervision of LSP troopers to prevent taser deployment where it amounts to excessive force?[63]

Plaintiff does not tie the proposed topics of inquiry to the specific elements of the claims or defenses raised in this litigation.  Nor does Plaintiff specify why he believes it is necessary to obtain this information from LSP's attorney, rather than the "LSP officials" to whom he refers. While Plaintiff suggests the information he seeks from Morrison is relevant to his failure to train and supervise claims against the LSP Defendants, his argument lacks merit when the actual elements of these claims are considered.

### 2. Plaintiff Cannot Overcome the Additional Burden When Seeking Discovery from an Attorney

Even if the information sought were relevant, Plaintiff has not overcome the significant

---

[61] R. Doc. 88, p. 2, citing *City of Canton*, 489 U.S. 378; *Davidson*, 848 F.3d at 398-98.

[62] *Terrell*, 413 F.Supp.3d at 522-23.

[63] R. Doc. 88, p. 6.

burden imposed when a party seeks the mental impressions of an attorney.[64]  Because Plaintiff already has the Morrison e-mail, it appears that Plaintiff's true intent in deposing her is to explore why she wrote it (and, possibly, similar emails) and to ascertain whether she was intending to encourage prosecutions for resisting arrest to accomplish a *Heck*-bar to claims for excessive force.

Morrison is the former General Counsel and Assistant Secretary for the DPSC Public Safety Services, who has been employed by the DPSC Office of Legal Affairs since August 2010.[65] The DPSC OLA provides legal consultation and representation to the LSP, among others.[66]  The LSP Defendants are all current or former employees of LSP.  According to Plaintiff's operative Complaint, the LSP Supervisors were the final policymakers for LSP and acted at all pertinent times under color of law and in the course and scope of their employment.[67]  Thus, while LSP is not named as a direct defendant in the litigation, LSP and agency counsel, Morrison, are closely connected to the litigation because current and former LSP employees, including LSP Supervisors, are named as defendants.[68]

The Fifth Circuit has found that "depositions of opposing counsel are disfavored generally" and "should be permitted in only limited circumstances."[69]  District courts in the Fifth Circuit have applied the three-prong test established by the Eighth Circuit in *Shelton v. American Motors Corporation*[70] to determine circumstances when in-house counsel or other opposing counsel

---

[64] Although the subpoena does not state the topic areas for Morrison's deposition, Plaintiff provided a list of the issues about which he seeks to examine Morrison in his briefing.  *Id.*

[65] R. Doc. 101-1, p. 20, ¶¶ 1-2, 4, 6.

[66] R. Doc. 101-1, p. 19, ¶ 4.

[67] R. Doc. 4, paras. 171, 174.

[68] Indeed, in this suit to recover damages, Plaintiff was precluded from naming LSP as a defendant because of the doctrine of sovereign immunity.  *See, e.g., Alden v. Maine*, 527 U.S. 706, 748 (1999).

[69] *National Western Life Insurance Co. v. Western National Life Insurance Co.*, No. 09-711, 2010 WL 5174366, at *2 (W.D. Tex. Dec. 13, 2010), quoting *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999).

[70] 805 F.2d 1323, 1327 (8th Cir. 1986).

should be subject to depositions.[71]  Under *Shelton*, in order to depose opposing counsel, the party seeking to take the deposition must show that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.[72]  In *Nguyen v. Excel Corp.*, the Fifth Circuit affirmed the use of the *Shelton* factors although it did not expressly adopt Shelton as the standard.[73]  The critical aspect in determining whether the *Shelton* test applies is not so much the status of the lawyer as "trial counsel," but the extent of the lawyer's involvement in the pending litigation.[74]  Application of the *Shelton* test has not been limited to cases where a party seeks to depose the opposing trial counsel.[75]  "In fact, the Eighth Circuit applied the three-factor test in *Shelton* to determine whether the opposing party's *in-house counsel* should be deposed," [76] a situation that is analogous to Plaintiff's attempt to depose Morrison.

Morrison does not serve as the LSP Defendants' counsel of record or trial counsel in this matter, but the *Shelton* factors are instructive because allowing her deposition to proceed would implicate the same concerns that disfavor depositions of opposing party's counsel—including detracting from the quality of the current attorney-client relationship by requiring attorneys to testify against their own clients.[77]  As to Morrison's involvement in the pending litigation, the

---

[71] *McKinney/Pearl Restaurant Partners, L.P. v. Metropolitan Life Insurance Co.*, No. 14-2498, 2016 WL 2609994, at *10 (N.D. Tex. May 6, 2016).

[72] *Shelton*, 805 F.2d at 1327.

[73] *Krispy Krunchy Foods LLC v. Jenna Marketing LLC*, No. 20-1424, 2023 WL 5281576, at *7 (W.D. La. June 22, 2023), discussing *Nguyen*, 197 F.3d at 209.

[74] *WIII Uptown, LLC v. B&P Restaurant Group, LLC*, No. 15-51, 2016 WL 4620200, at *9 (M.D. La. Sep. 6, 2016), citing *Murphy v. Adelphia Recovery Trust*, 2009 WL 4755368, at *3 (N.D. Tex. Nov. 3, 2009) (internal quotations omitted).

[75] *National Western*, 2010 WL 5174366, at *3, citing *Murphy*, 2009 WL 4755368 at *3.

[76] *Id.*, at *3, citing *Shelton*, 805 F.2d at 1327.

[77] *Securus Technologies, Inc. v. Global Tel*Link Corp.*, 331 F.Supp.3d 633, 638 (N.D. Tex. Oct. 3, 2017), citing *Shelton*, 805 F.2d at 1327. *See also Kerr v. Able Sanitary and Environmental Services, Inc.*, 295 N.J.Super. 147, 155 (1996) (stating that attorney depositions frequently interfere with the adversarial process by inviting delay, disruption,

record shows that she has served as LSP's attorney since 2010, providing legal advice and consultation to the same office that employed the LSP Defendants at all times relevant to this litigation.[78]  Also, another court in this Circuit has applied *Shelton* to an attempt to depose attorneys who previously represented the opposing party in proceedings that were at issue in the litigation but--as in the present case--were not technically opposing counsel in the matter.[79]

Here, Morrison is agency counsel for the office that employs the LSP Defendants.[80] Additionally, Plaintiff's attachment of the Morrison e-mail to his subpoena shows Plaintiff's intent to make the legal counsel Morrison provided to agency litigation team members the central focus of the proposed examination.   Under these circumstances, where concerns of invading an attorney's privacy and potentially allowing discovery of counsel's mental impressions and litigation analysis are implicated, the criteria in the *Shelton* test should be considered instructive as to whether good cause exists for the Court to quash Morrison's deposition.[81]

### a.    Shelton *Factor #1: Whether Other Means Exist to Obtain the Information*

The first *Shelton* factor considers whether the party seeking to take the deposition has shown that no other means exist to obtain the information than to depose counsel.[82]  Plaintiff has not addressed this issue.  However, the LSP Defendants argue that five of the six individual LSP Defendants have already been deposed and none of them were asked whether they had received

---

harassment, and perhaps even disqualification of the attorney from further representation of the client in the underlying litigation).

[77] *National Western*, 2010 WL 5174366, at *3, citing *Murphy*, 2009 WL 4755368 at *3.

[78] *See WIII Uptown*, 2016 WL 4620200, at *9, citing *Murphy*, 2009 WL 4755368, at *3.  *See also* R. Doc. 101-1, p. 19, ¶¶ 1-4.

[79] *Securus*, 331 F.Supp.3d at 637-38.

[80] R. Doc. 101-1, ¶¶ 1-4.

[81] *See Hickman*, 329 U.S. at 510.  *See also Securus*, 331 F.Supp. at 638.

[82] *Shelton*, 805 F.2d at 1327.

information from Morrison or anyone else about "the use of resisting arrest charges to insulate LSP officials from excessive force cases."[83]  In any event, it does not appear as though Morrison is the only party who can provide the information Plaintiff seeks.  For instance, Plaintiff seeks information about which defendants received Morrison's e-mail.  Plaintiff could have directly addressed this inquiry to the LSP Defendants through written discovery or in depositions.  Plaintiff also seeks information about how LSP reviewed use of force claims involving LSP troopers at the time the Morrison e-mail was sent.[84]  Plaintiff could have requested this information from non-attorney LSP officials.  While Morrison may be able to identify the recipients of her e-mail, she is certainly not the only individual who could supply this information.  Plaintiff has not demonstrated, nor does the record reflect, that no other means exist to obtain the information Plaintiff seeks.

### b.  Shelton *Factor #2: Relevance and Privilege*

#### i.  Relevance

Plaintiff alleges that the information he seeks is potentially relevant to his failure to train and supervise claims to show that LSP personnel had knowledge of prior excessive force claims involving taser deployments that were brought against LSP troopers.  Yet, as indicated above, Plaintiff's relevance argument is framed in terms of establishing prior knowledge of *validated* use of force claims against the LSP troopers, when the *Terrell* case discussed in the Morrison e-mail involved a use of force claim against LSP troopers that was *not* validated and was, instead, dismissed on summary judgment for lack of a constitutional violation.

Also, the information Plaintiff seeks from the proposed examination of Morrison does not

---

[83] R. Doc. 106, p. 4.

[84] As fact discovery closed on August 30, 2024, Plaintiff no longer has the ability to obtain this information from other sources.  R. Doc. 83.

appear *directly* relevant to any elements of Plaintiff's failure to train or supervise claim against the LSP Defendants.[85]  The information Plaintiff seeks does not help establish that *Trooper Sollie* was inadequately trained or supervised; that any failure to train or supervise Trooper Sollie *caused* the alleged violation of Plaintiff's rights; or that LSP's training program was inadequate.[86]  At best, Plaintiff's discovery request for information about prior use of force claims against LSP troopers *may lead to* the discovery of a pattern of violations by them.  Here, Plaintiff's deposition request more closely resembles an attempt to establish relevance under the previous version of Fed. R. Civ. P. 26 that was in effect before the 2015 amendment, when parties were still allowed to seek to discover information that was "likely to lead to the discovery of relevant evidence."[87]  The direct relevance of the information Plaintiff seeks is attenuated at best.

### ii.   *Attorney-Client and Work Product Privilege*

The next consideration is whether the information Plaintiff seeks is nonprivileged.  Plaintiff has requested the production of "[a]ny e-mails" Morrison sent "regarding the significance of convictions on resisting arrest charges to the outcome of civil rights lawsuits against LSP troopers"[88]  Plaintiff also seeks to examine Morrison about the identity of the LSP officials who received a copy of her e-mail or were otherwise made aware of the advice Morrison gave; the number of civil suits and use of force claims involving LSP troopers that were under review by LSP at the time she sent her e-mail; and information about any discussions regarding the need for further training and supervision of LSP troopers to prevent taser deployment that amounts to

---

[85] *See Woodward*, 2020 WL 3960396, at *5, quoting *Rivera*, 2019 WL 6134190, at *4 (E.D. La. Nov. 19, 2019) ("This current standard of discoverability is more limited to direct relevance as opposed to the previous version of Rule 26 that stipulated information is relevant if it is 'likely to lead to the discovery of relevant evidence.'").

[86] *Estate of Davis*, 406 F.3d at 381, citing *Smith v. Brenoettsy*, 158 F.3d at 911–12; *Porter*, 659 F.3d at 447, citing *Connick*, 563 U.S. at 61.

[87] *See Woodward*, 2020 WL 3960396, at *5, quoting *Rivera*, 2019 WL 6134190, at *4.

[88] R. Doc. 84-2, p. 1.

16

excessive force.[89]   Morrison objects to Plaintiff's document production request, claiming attorney-client privilege on behalf of LSP and attorney-work product privilege on behalf of Morrison.

Plaintiff disputes that the information he seeks is privileged, contending that any privilege over the Morrison e-mail was waived because LSP previously produced a copy of the Morrison e-mail to a news reporter in response to a public records request and the e-mail was subsequently broadcast by a Baton Rouge television station.[90]   However, Plaintiff goes on to suggest--without citing any authority in support--that the waiver of privilege caused by the prior production of the Morrison e-mail extends beyond the e-mail itself and gives him a "good faith basis to question [Morrison] about it."[91]   Plaintiff also suggests that regardless of whether the attorney-client privilege applies, there is no protection against the discovery of underlying facts from their source merely because those facts have been communicated to an attorney.[92]   Plaintiff thus contends that he can examine Morrison about related issues of use of force, including taser deployment, involving LSP troopers.

---

[89] R. Doc. 88, p. 6.

[90] The cover letter that accompanied the production of the e-mail stated that the documents were "deemed to contain privileged attorney work product, and confidential communications among Department attorneys about pending legal matters," but that the Deputy Ssecretary for DPSC Public Safety Services had "chosen to waive any privilege over the responsive documents" because the news reporter who requested it "presumably already obtained the confidential communication."  R. Doc. 97-1, p. 7.  Plaintiff contends that any privilege over the Morrison e-mail was waived by the prior production of the e-mail in response to the public records request or the prior broadcast of the e-mail, which rendered it "common knowledge."  R. Doc. 88, pp. 3, 22, citing *United States v. El Paso, Co.*, 682 F.2d 530, 539 (5th Cir. 1982) (stating that the purpose of the attorney-client privilege is to foster full client disclosure to the lawyer, assuring the client that his private disclosures will not become common knowledge, and that a breach of confidentiality thus forfeits the client's right to claim the privilege).

[91] R. Doc. 88, p. 7, n. 23.

[92] R. Doc. 88, p. 7, citing *El Paso*, 682 F.2d at 539, n. 10 ("The attorney-client privilege does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney"). However, the *El Paso* court was citing the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981), where the Court held that the attorney-client privilege only protects disclosure of communications-- and not underlying facts-- by those who communicated *with* the attorney, *i.e.*, the client.  In other words, Plaintiff is taking the *El Paso* quote out of context and erroneously suggesting that the attorney-client privilege allows a party to obtain discovery from an *attorney* about underlying facts, when the case was referring to an attempt to obtain discovery from a *client*.

The attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice.[93]  The privilege also protects communications from the lawyer to the client, at least if they would tend to disclose the client's confidential communications.[94]  The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[95]  Its application is a question of fact to be determined  in the light of the purpose of the privilege and guided by judicial precedents.[96]  Communications between government agencies and agency counsel are protected by the privilege so long as they are made confidentially and for the purpose of obtaining legal advice for the agency.[97]  The burden of demonstrating the applicability of the privilege rests on the party who invokes it.[98]  Because the privilege protects only confidential communications, the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests.[99]  The attorney-client privilege belongs to the client alone.[100]

The work product privilege "serves to protect the interests of clients and their attorneys in preventing disclosures about the case by shielding the lawyer's mental processes from his

---

[93] *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 720 (5th Cir. 1985), citing *Fisher v. United States*, 425 U.S. 391, 403 (1976).

[94] *Hodges*, 768 F.2d at 720-21 (citations omitted).

[95] *Sparton Corp. v. United States,* 44 Fed.Cl. 557, 566 (Fed.Cir. 1999), quoting *Upjohn Co.*, 449 U.S. at 389 (other citations omitted).

[96] *Hodges*, 768 F.2d at 721, citing *United States v. Aluminum Co. of Am.*, 193 F.Supp. 251, 252 (N.D.N.Y. 1960).

[97] *Sparton Corp.*, 44 Fed.Cl. at 566, citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975) (other citation omitted).

[98] *Hodges*, 768 F.2d at 721 (citations omitted).

[99] *Id.*, citing *United States v. Gann*, 732 F.2d 714, 723 (9th Cir. 1984); *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 23 (9th Cir. 1981).

[100] *Sparton Corp.*, 44 Fed.Cl. at 567, citing *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990); *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987).

adversary."[101]  The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedures and provides that, ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.[102]  This Rule permits disclosure of documents and tangible things constituting work product upon a showing of substantial need and inability to obtain the equivalent without undue hardship.[103]  However, in ordering discovery of such materials when the required showing has been made, the court "shall protect" against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.[104] In this way, Rule 26 accords special protection to work product revealing the attorney's mental processes.[105]  Opposing counsel may rarely, if ever, use discovery mechanisms to obtain the research, analysis of legal theories, mental impressions, and notes of an attorney acting on behalf of his client in anticipation of litigation.[106]  In the Fifth Circuit, litigation does not necessarily need to be imminent so long as the primary motivating purpose behind the creation of the document is to aid in possible future litigation.[107]  The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production.[108]  "[A]

---

[101] *In re E.E.O.C.*, 207 Fed.Appx. 426, 431 (5th Cir. 2006), quoting *In re Grand Jury Subpoena*, 419 F.3d 329, 338 (5th Cir. 2005).

[102] *See* Fed.R.Civ.P. 26(b)(3)(A).

[103] *Upjohn Co.*, 449 U.S. at 400.  *See also* Fed. R. Civ. P. 26(b)(3)(A)(ii).

[104] *Id.*, quoting Fed. R. Civ. P. 26(b)(3)(B).

[105] *Id*.

[106] *F.T.C. v. U.S. Grant Resources, LLC*, No. 04-596, 2004 WL 1444951, at *11, citing *Dunn v. State Farm Fire & Casualty Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *Hodges,* 768 F.2d at 721.

[107] *BASF Corp. v. Man Diesel & Turbo North America, Inc.*, No. 13-42, 2015 WL 542247, at *2 (M.D. La. Feb. 10, 2015), citing *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

[108] *Hodges,* 768 F.2d at 721, citing *Hickman*, 329 U.S. at 511-12; *In re Anthracite Coal Antitrust Litig.*, 81 F.R.D. 516, 522 (M.D. Pa. 1979).

waiver of work product protection encompasses only the items actually disclosed … [and] does not imply that work product protection has been destroyed for other documents of the same character."[109]

Here, LSP's waiver of attorney-client and work-product privilege over the September 2019 Morrison e-mail, expressed through correspondence drafted by an LSP agency attorney, at most waives LSP and Morrison's right to claim privilege over this particular e-mail.[110]  However, Plaintiff's production request is not solely limited to this e-mail.  The subpoena also requests any other e-mails sent by Morrison "regarding the significance of convictions on resisting arrest charges to the outcome of civil rights lawsuits against LSP troopers," as well as Morrison's testimony.  By seeking e-mails and testimony that may reveal Morrison's legal theories and mental impressions regarding the significance of convictions on resisting arrest charges, the request implicates the attorney-work product privilege.[111]  The request also implicates the attorney-client privilege, claimed by LSP, if any responsive e-mails were sent by Morrison to LSP personnel.

Plaintiff's proposed topics of examination also implicate the attorney-client and work-product privileges by seeking information about communications Morrison had with LSP representatives, including any legal advice or consultation she may have provided to them, and by seeking information about pending claims against LSP troopers, which would necessarily involve delving into Morrison's files and potentially revealing her decisions, analyses, and strategies as

---

[109] *Sparton Corp.*, 44 Fed.Cl. at 565, quoting 6 James Wm. Moore, *Moore's Federal Practice* § 26.70[6][c] at 226-28 (3d ed. 1997).

[110] R. Doc. 101-1, p. 25.

[111] *See, e.g., In re E.E.O.C.*, 207 Fed.Appx. at 432, citing *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 429 (E.D. Pa. 1984) ("With respect to the proposed testimony from DeLeonardo, Agro seeks to delve into her discussions with other EEOC attorneys about the merits, or lack thereof, of this case, specifically, whether the facts warranted continued litigation.  These communications are protected by the attorney-client privilege").

counsel for LSP.[112]  Therefore, with the sole exception of the Morrison e-mail over which LSP waived privilege because it had already been obtained by the media, Plaintiff has not established that the information he seeks from Morrison is not privileged.[113]

### c.  Shelton *Factor #3: Information Crucial to the Preparation of the Case*

There is also no indication that Morrison's testimony is crucial in this litigation.  It is undisputed that Morrison did not participate in Plaintiff's arrest, or his criminal charges/prosecution.[114]  Morrison has also attested that she did not supervise Trooper Sollie in the day-to-day performance of his job duties/functions as an LSP Trooper.[115]  Accordingly, there is no indication that Morrison has any independent or firsthand knowledge of the facts that led to the claims against the LSP Defendants in this case.[116]  Plaintiff also has not alleged that Morrison has any information crucial to the prosecution of this case.  The fact that Plaintiff listed Morrison in his discovery responses as a person possessing "relevant knowledge about [his] claims" does not convince this Court otherwise.[117]  Rather, the information Plaintiff seeks to obtain from Morrison has attenuated, if any relevance, to Plaintiff's claims.  Because the information sought could have been obtained by other means; is of questionable relevance and implicates attorney-client and work-product privileges; and is not crucial to the preparation of this case, good cause exists to quash the subpoena to Morrison.

---

[112] *See, e.g., Securus*, 331 F.Supp.3d at 639 ("[S]ubject 5 makes inquiry into the communications, decisions, analyses, and strategies of the Securus' counsel.  These are clearly directed to information that is protected by these privileges.")

[113] *See, e.g., WIII Uptown*, 2016 WL 4620200, at *10.

[114] R. Doc. 101-1, p. 20, ¶ 15.

[115] *Id.*, p. 21, ¶ 16.

[116] *See Sparton Corp.*, 44 Fed.Cl. at 568.

[117] *See* R. Doc. 88, p. 6.  *See also* R. Doc. 88-1, p. 4.

### III.    CONCLUSION

Plaintiff has not established justification or necessity to depose Attorney Morrison. Plaintiff also has not demonstrated that the information he seeks is relevant and nonprivileged. Thus, Plaintiff has failed to demonstrate that the deposition of Morrison should proceed in this matter.

**IT IS ORDERED** that the Motion for Leave to File Reply Brief, to Exceed the Court's Brief Page Limitation and to Strike (and Replace) OSP and Morrison's Previously Filed Reply Brief, filed by non-parties, the Louisiana Department of Public Safety and Corrections, Office of State Police and Faye Morrison,[118] is **GRANTED**.  The Clerk of Court is directed to **FILE** the Reply to Plaintiff's Memorandum in Opposition to Motion to Quash Deposition Subpoena[119] into the record and to **STRIKE** the previously filed Reply to Plaintiff's Memorandum in Opposition to Motion to Quash Deposition Subpoena,[120] filed by the Louisiana Department of Public Safety and Corrections, Office of State Police and Faye Morrison.

**IT IS FURTHER ORDERED** that the Motion to Quash Deposition,[121] filed by the Louisiana State Police and Faye Dysart Morrison, is **GRANTED**, and the Subpoena to Testify at a Deposition in a Civil Action,[122] issued by Plaintiff Kevin Cobbins, be and hereby is **QUASHED**.

Signed in Baton Rouge, Louisiana, March 13, 2025.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[118] R. Doc. 101.

[119] R. Doc. 101-1.

[120] R. Doc. 97.

[121] R. Doc. 84.

[122] R. Doc. 84-2.